[16 NE3d 561, 992 NYS2d 503]

Norex Petroleum Limited, Appellant, v Leonard Blavatnik
et al., Respondents.

Argued May 6, 2014; decided June 26, 2014

**POINTS OF COUNSEL**

*Simpson Thacher & Bartlett LLP*, New York City (*Barry R. Ostrager, Mary Kay Vyskocil, Jonathan M. Weiss* and *Hiral D. Mehta* of counsel), and *Simpson Thacher & Bartlett LLP*, Los Angeles, California, for appellant. Norex Petroleum Limited's claims are timely under CPLR 205 (a). (*Burnett v New York Central R. Co.*, 380 US 424; *National Sur. Co. v Ruffin*, 242 NY 413; *Antone v General Motors Corp., Buick Motor Div.*, 64 NY2d 20; *Global Fin. Corp. v Triarc Corp.*, 93 NY2d 525; *Portfolio Recovery Assoc., LLC v King*, 14 NY3d 410; *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 834 F Supp 2d 949; *Semtek Int'l Inc. v Lockheed Martin Corp.*, 531 US 497; *Lehman Bros. v Hughes Hubbard & Reed*, 245 AD2d 203; *Baker v Commercial Travelers Mut. Acc. Assn. of Am.*, 3 AD2d 265; *Matter of Winston v Freshwater Wetlands Appeals Bd.*, 224 AD2d 160.)

*White & Case LLP*, New York City (*Owen C. Pell, Scott E. Hershman, Brian E. Fritz* and *Max Shterngel* of counsel), for OAO Tyumen Oil Company and another, *Hoguet Newman Regal & Kenney, LLP*, for Simon Kukes, *Sullivan & Cromwell LLP*, New York City, *Sullivan & Cromwell LLP*, Washington, D.C., for BP PLC, *Patterson Belknap Webb & Tyler LLP*, New York City, for Renova, Inc., *Akin Gump Strauss Hauer & Feld LLP*, for Alfa Group Consortium, *Curtis, Mallet-Prevost, Colt & Mosle*

*LLP*, for Leonard Blavatnik, *Reed Smith LLP*, for Victor Vekselberg, and *Quinn Emanuel Urquhart & Sullivan, LLP*, for Access Industries, Inc., respondents. I. In ruling that Norex Petroleum Limited's claims are time-barred, the courts below correctly applied this Court's precedent and harmonized CPLR 202 and 205. (*Monahan v New York City Dept. of Corrections*, 214 F3d 275; *PRC Harris, Inc. v Boeing Co.*, 700 F2d 894; *Global Reins. Corp.-U.S. Branch v Equitas Ltd.*, 18 NY3d 722; *Global Fin. Corp. v Triarc Corp.*, 93 NY2d 525; *Matter of Smith Barney, Harris Upham & Co. v Luckie*, 85 NY2d 193; *Portfolio Recovery Assoc., LLC v King*, 14 NY3d 410; *Antone v General Motors Corp., Buick Motor Div.*, 64 NY2d 20; *Childs v Brandon*, 60 NY2d 927; *Martin v Dierck Equip. Co.*, 43 NY2d 583; *Rescildo v Macy's*, 187 AD2d 112.) II. By its express terms, 28 USC § 1367 (d) cannot save Norex Petroleum Limited's otherwise time-barred claims. (*Yonkers Contr. Co. v Port Auth. Trans-Hudson Corp.*, 93 NY2d 375; *Lehman Bros. v Hughes Hubbard & Reed*, 92 NY2d 1014; *Thompson v Paul*, 657 F Supp 2d 1113; *Jinks v Richland County*, 538 US 456; *Matter of Goldstein v New York State Urban Dev. Corp.*, 13 NY3d 511; *Raygor v Regents of Univ. of Minn.*, 534 US 533; *Williams v State of New York*, 235 AD2d 776; *Bittner v Cummings*, 188 AD2d 504; *United States v Locke*, 471 US 84; *Greenblatt v New York Sur. Co.*, 246 AD2d 385.)

*Jonathan R. Siegel*, George Washington University Law School, Washington, D.C., amicus curiae. The Appellate Division, First Department, misconstrued the phrase "unless State law provides for a longer tolling period" in 28 USC § 1367 (d). (*Matter of New York County Lawyers' Assn. v Bloomberg*, 19 NY3d 712; *Matter of M.B.*, 6 NY3d 437; *Jinks v Richland County*, 538 US 456.)

*David Paul Horowitz*, Pound Ridge, amicus curiae. I. The authority cited by the Appellate Division, First Department, in *Norex Petroleum Ltd. v Blavatnik* (105 AD3d 659 [2013]) does not support that Court's holding and, in fact, support's plaintiff's position. (*Global Fin. Corp. v Triarc Corp.*, 93 NY2d 525.) II. The policies underpinning CPLR 202 are not violated by permitting plaintiff to invoke CPLR 205 (a) and commence a second action on the same transaction(s). (*Insurance Co. of N. Am. v ABB Power Generation*, 91 NY2d 180.) III. The "broad and liberal purpose" of CPLR 205 (a) cannot be reconciled with dismissal of plaintiff's second action. (*Gaines v City of New York*, 215 NY 533.) IV. *Besser v Squibb & Sons* (146 AD2d 107 [1989]) involved a revival, not a saving statute, and has no bearing on CPLR 205 (a). (*Besser v Squibb & Sons*, 75 NY2d 847.)

**OPINION OF THE COURT**

READ, J.

This dramatic and long-running contest over control of a lucrative oil field in Western Siberia reduces at present to an open question of New York civil procedure involving the interplay of CPLR 202, New York's "borrowing" statute, and CPLR 205 (a), New York's "savings" statute. When a cause of action accrues outside New York and the plaintiff is a nonresident, section 202 "borrows" the statute of limitations of the jurisdiction where the claim arose, if shorter than New York's, to measure the lawsuit's timeliness.[1] New York's "savings" statute, section 205 (a), allows a plaintiff to refile claims within six months of a timely prior action's termination for reasons other than the merits or a plaintiff's unwillingness to prosecute the claims in a diligent manner.[2]

This appeal calls upon us to decide whether a nonresident plaintiff who filed a timely action in a New York federal court may refile claims arising from the same transaction in state court within six months of the federal action's non-merits termination, even though the suit would be untimely in the out-of-state jurisdiction where the claims accrued. We hold that such a lawsuit is not time-barred, and therefore reverse the Appellate Division.[3]

---

1. CPLR 202 states in its entirety that
   "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

2. CPLR 205 (a) states, as relevant, that
   "[i]f an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period."

3. We decide only that Norex's state court action, refiled pursuant to CPLR 205 (a), is not time-barred by CPLR 202; we do not address and express no opinion about whether Norex's lawsuit fulfills other requirements of section 205 (a). For purposes of discussion in this opinion, we simply assume

I

On February 26, 2002, plaintiff Norex Petroleum Limited (Norex), a resident of Alberta, Canada, commenced an action against defendants Leonard Blavatnik, Victor Vekselberg, Access Industries, Inc., Renova, Inc. and Tyumen Oil Company, among others, in the United States District Court for the Southern District of New York, asserting various claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 USC §§ 1961-1968). Stripped to its basics, the complaint alleges that defendants wrested away Norex's majority interest in a Russian oil company with significant proven reserves and, concomitantly, deprived Norex of hundreds of millions of dollars in profits and dividends as part of a massive scheme to take control of Russian oil assets.

Defendants moved to dismiss Norex's complaint on various grounds, including forum non conveniens. On February 18, 2004, the judge granted the motion; she was persuaded that the relevant factors strongly favored a Russian forum (*Norex Petroleum Ltd. v Access Indus., Inc.*, 304 F Supp 2d 570 [SD NY 2004]). Norex appealed, and by decision dated July 21, 2005, the Second Circuit reversed (*id.*; 416 F3d 146 [2d Cir 2005]). In so doing, the court remarked that "the district court did not ascribe any forum-shopping motives to Norex's choice of a New York forum," and that "the totality of circumstances suggests that Norex's decision to sue in New York was informed by genuine convenience" (*id.* at 155, 157).[4] Norex amended its complaint on December 21, 2005 to add BP LLP (BP) as a defendant, and to assert claims for tortious conduct and unjust enrichment under Russian law against all defendants except BP.

Defendants then moved to dismiss pursuant to Federal Rules of Civil Procedure rule 12 (b) (1) for lack of subject matter jurisdiction. On September 24, 2007, the district court granted the motion (*id.*; 540 F Supp 2d 438 [SD NY 2007]). The judge concluded that neither of the tests commonly used to analyze

terminated on the merits, and Norex's state court action alleges claims "upon the same transaction or occurrence" as its federal predecessor. We appreciate that defendants contend that the termination of Norex's federal action constituted "a final judgment upon the merits" within the meaning of CPLR 205 (a). Upon remittal, Supreme Court must resolve this and any other issues raised by defendants in their motions to dismiss and not reached because the lawsuit was dismissed as untimely.

4.   Defendants petitioned for certiorari on February 17, 2006 (2006 WL 431070 [2006]), which the United State Supreme Court denied on May 30, 2006 (*Tyumen Oil Co. v Norex Petroleum Ltd.*, 547 US 1175 [2006]).

whether a federal statute has extraterritorial effect—the "conduct" test and the "effects" test—supported subject matter jurisdiction in a case involving the extraterritorial application of RICO. Since RICO supplied the sole basis for federal jurisdiction, the district court declined to exercise supplemental jurisdiction over Norex's claims under Russian law (*id.* at 449; *see* 28 USC § 1367 [c] [3], discussed *infra* at 672 n 6). Norex again appealed to the Second Circuit.

While the appeal was pending, the United States Supreme Court decided *Morrison v National Australia Bank Ltd.* (561 US 247 [2010]), which held that federal securities fraud statutes generally do not apply extraterritorially. The Court abandoned the "conduct and effects" test, and instead adopted a bright-line rule that a federal statute lacks extraterritorial reach absent a clear congressional expression to the contrary. On September 28, 2010, the Second Circuit affirmed the district court's dismissal of Norex's complaint.

In light of *Morrison*, the Second Circuit held that RICO's extraterritorial application was "properly considered as a question of whether [Norex's] complaint states a claim for which a United States federal court can provide relief, not as a question of whether the court possesses subject matter jurisdiction to hear the claim" (*Norex Petroleum Ltd. v Access Indus., Inc.*, 631 F3d 29, 31 [2d Cir 2010], *superseding earlier op affg on other grounds* 622 F3d 148 [2d Cir 2010]; *see Morrison*, 561 US at 253-254). Accordingly, the court determined that the district court had erred in dismissing Norex's complaint for lack of subject matter jurisdiction, but concluded that dismissal was nonetheless warranted under Federal Rules of Civil Procedure rule 12 (b) (6) for failure to state a claim upon which relief may be given. The Second Circuit declined to revisit its previous holding that RICO is silent as to any extraterritorial application, and added that, in any event, Norex's arguments were foreclosed by *Morrison* or otherwise unavailing.

On October 20, 2010, Norex filed a petition for rehearing en banc, and on November 22, 2010, the United States Department of Justice filed an amicus brief in support of a limited rehearing en banc. The Justice Department's primary request, though, was for the Second Circuit to make clear that its ruling in Norex's lawsuit did not apply when the government sought to enforce RICO either civilly or criminally. On December 8, 2010, the court issued an amended decision, which included a sentence to clarify that its opinion did not speak to government enforcement (*see Norex Petroleum Ltd.*, 631 F3d at 33).

On January 18, 2011, the Second Circuit denied Norex's request for a rehearing en banc. Norex then moved for a stay of the issuance of the court's mandate, "to avoid potentially triggering the running of relevant 'savings action statutes'" while it pursued certiorari in the United States Supreme Court; Norex identified CPLR 205 (a) as such a potential "savings" statute. The court granted the motion on February 1, 2011.[5]

On March 7, 2011, Norex brought this action in Supreme Court. In a first amended complaint filed on June 23, 2011, Norex asserted eight claims against all defendants; namely, tortious interference with contract; tortious interference with prospective business relations; conversion; breach of fiduciary duties; unjust enrichment; action for money had and received; unjust enrichment in violation of Russian law; and intentional tortious conduct/minority oppression in violation of Russian law.

Defendants moved to dismiss the complaint on multiple grounds, including that Norex's action was untimely under CPLR 202. As a resident of Alberta, Canada, alleging purely economic injuries, Norex's injuries accrued in Alberta (*see Global Fin. Corp. v Triarc Corp.*, 93 NY2d 525, 529 [1999] [when the claimed injury is economic, the cause of action typically accrues "where the plaintiff resides and sustains the economic impact of the loss"], citing *Matter of Smith Barney, Harris Upham & Co. v Luckie*, 85 NY2d 193, 207 [1995], *cert denied sub nom. Manhard v Merrill Lynch, Pierce, Fenner & Smith*, 516 US 811 [1995]). Alberta law provides a two-year statute of limitations for the torts alleged by Norex, and does not have a "savings" statute akin to CPLR 205 (a).

By decision and order dated June 13, 2012, Supreme Court consolidated defendants' various motions, and dismissed Norex's complaint as time-barred (2012 NY Slip Op 33181[U] [2012]). Reasoning that CPLR 202 required her to apply Alberta's shorter limitations period to determine if Norex's state court action was timely, the judge ruled that Norex's claims against the non-BP defendants expired at the latest on February 26, 2004 (i.e., two years after Norex filed its federal court action), and its claims against BP expired at the latest on December 21, 2007 (i.e., two years after Norex amended its federal complaint to add BP as a defendant).

---

**5.** On April 18, 2011, Norex filed its certiorari petition (79 USLW 3636 [2011]), which was dismissed upon the parties' stipulation on June 29, 2011. The Second Circuit eventually issued its mandate on July 26, 2011.

Supreme Court also rejected Norex's assertion that its state law claims were tolled under 28 USC § 1367 (d), which provides a plaintiff with a 30-day grace period to refile in a state court after a non-merits dismissal of supplemental claims "unless State law provides for a longer tolling period."[6] Supreme Court held that Norex did not enjoy the benefit of 28 USC § 1367 because CPLR 205 (a) provides for a longer tolling period. But the judge also concluded that CPLR 205 (a) did not, in fact, permit Norex's state court action against defendants since, as she had already made clear, the lawsuit was untimely by virtue of CPLR 202. Norex appealed.

The Appellate Division unanimously affirmed (105 AD3d 659 [1st Dept 2013]). The court first agreed with Supreme Court that Norex's state court action was untimely under Alberta law and therefore, by operation of CPLR 202, was also time-barred in New York. Further, the court adopted Supreme Court's analysis with regard to why Norex's state and Russian law claims were untimely under 28 USC § 1367 (d). The Appellate Division added in dictum that, even if Norex's lawsuit had been timely under section 1367 (d), the relation-back doctrine would not have authorized the six state law claims that Norex alleged in its complaint, and, further, that Norex's federal lawsuit was dismissed on the merits for purposes of section 1367 (d). Norex sought leave to appeal, which we granted on September 12, 2013 (21 NY3d 865 [2013]).

## II

Norex contends that CPLR 205 (a) permits its "new" state court action because its initial, or "prior," federal court action was timely under CPLR 202. Defendants, by contrast, argue that Norex may not benefit from section 205 (a) because its "new" action was untimely under the laws of Alberta, which

---

**6.** Subsection (d) of 28 USC § 1367 states in its entirety that
"[t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

Subsection (a) vests the district courts with supplemental jurisdiction over all nonfederal claims in the action which are part of the underlying case or controversy (28 USC § 1367 [a]). Subsection (c) enumerates the grounds upon which the district court may, in its discretion, decline to exercise supplemental jurisdiction, including that "the district court has dismissed all claims over which it has original jurisdiction" (28 USC § 1367 [c] [3]), as happened here.

has no savings law, and so is barred by section 202. Stated another way, Norex would have the courts apply section 202 only once, to determine whether its initial action would have been timely in Alberta when filed in federal court in New York, while defendants would ask us to apply section 202 a second time, to assess whether Norex's follow-on action was timely in Alberta when commenced in state court.

### Global Financial

Norex claims that in *Global Financial* we "implicitly rejected" the lower courts' and defendants' interpretation of how CLPR 202 and CPLR 205 (a) fit together. In *Global Financial,* the nonresident plaintiff brought an action in federal district court against the defendant to recover commissions and fees it claimed to be owed. The plaintiff filed its complaint just shy of six years after the defendant refused a demand for payment. Since both parties were Delaware corporations, the district court dismissed the complaint for lack of subject matter jurisdiction. Three months later, within CPLR 205 (a)'s six-month savings period, the plaintiff commenced a substantially similar suit in Supreme Court.

The defendant sought dismissal on the ground that the plaintiff's state court action was time-barred under CPLR 202 because its federal action was not brought within the time limitations imposed by the laws of either Delaware, where the plaintiff was incorporated, or Pennsylvania, where the plaintiff asserted that its principal place of business was located. The plaintiff countered that its claims were timely because they accrued in New York, where the parties' contract was negotiated, executed, substantially performed and allegedly breached. At the time the federal lawsuit was brought, the claims would have been time-barred in Delaware (*see* Del Code Ann, tit 10, §§ 8106 [three-year limitations period for actions on a promise], 8111 [one-year limitations period for actions on services]) and Pennsylvania (*see* 42 Pa Cons Stat Ann § 5525 [four-year limitations period for contract actions]), but not in New York (*see* CPLR 213 [2] [six-year statute of limitations]). Supreme Court agreed with the defendant and dismissed the complaint, and the Appellate Division unanimously affirmed.

We held that "[w]hen an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss" (*Global Fin.*, 93 NY2d at 529, citing *Smith Barney*, 85 NY2d at 207), and here, the

claims were time-barred "whether one look[ed] to . . . Delaware or Pennsylvania" (*Global Fin.*, 93 NY2d at 530). Consequently, the plaintiff's federal lawsuit—the "prior" action within the meaning of CPLR 205 (a)—was untimely, necessarily rendering the "new" action in state court untimely as well.

Thus, in *Global Financial* we decided where a nonresident's contract claims accrue for purposes of CPLR 202, not whether a new action commenced pursuant to CPLR 205 (a) may be time-barred by CPLR 202 even though the prior action from which the new action flows was timely. In short, the defendant in *Global Financial* did not advance the argument pressed by defendants here. Indeed, citing CPLR 205 we observed that the parties "*do not dispute* that [the state court] action is timely if the Federal action was timely when commenced" (*id.* at 527 [emphasis added]). We had no occasion to consider, much less decide, whether the parties were correct.

The defendant in *Global Financial* alleged on appeal that the plaintiff's principal place of business was Florida, not Pennsylvania. We remarked in a footnote that it was "unnecessary for us to choose between these two States, as plaintiff's claims are time-barred under Florida's Statute of Limitations as well as Pennsylvania's (*see,* Fla Stat Annot § 95.11 [2] [five-year limitations period for breach of contract])" (*id.* at 527 n 1). This footnote and our solitary reference to CPLR 205 in *Global Financial* provoked a lively debate between Norex and defendants.

Norex asserts that because Florida, like Alberta, does not have a savings statute, it is "[s]ignificant" that we "did not deem it relevant whether the laws of other states, whose statutes of limitations might be borrowed, had savings statutes different from CPLR 205." Instead, we "simply applied CPLR 205 to determine that the relevant date for the statute of limitations analysis under CPLR 202 was the filing of the original federal complaint." As a result, according to Norex, "*Global Financial* plainly stands for the proposition that CPLR 205 (a) is available to non-resident plaintiffs, like Global Financial and Norex, whose claims accrue outside of New York, *even if* the state laws 'borrowed' under CPLR 202 for purposes of determining the limitations period (Florida in the case of *Global Financial*, Alberta in this case) do not have a savings statute at all."

Defendants respond that our citation to CPLR 205 in *Global Financial* was unimportant because "the laws of the foreign jurisdictions referred to under CPLR § 202 (Pennsylvania and

Delaware) were virtually identical to CPLR § 205 (a)" (citing Del Code Ann, tit 10, § 8118 [one-year savings statute], and 42 Pa Cons Stat Ann § 5535 [one-year savings statute]). As a result, defendants continue, "in the absence of any conflict identified by the parties, [the Court] cited to CPLR § 205 (a)—as opposed to the similar laws of Pennsylvania or Delaware—relating to plaintiff's right to re-file, and . . . simply noted (without having to rule on the issue) that '[t]he parties do not dispute that this action is timely if the Federal action was timely when commenced' " (quoting *Global Fin.*, 93 NY2d at 527). Defendants therefore suggest that the parties and the Court focused on the original filing date in *Global Financial* merely because the plaintiff's claim was going to be "saved" on the refiling date, if originally timely filed, no matter which state's law applied. As summed up by defendants, "borrowing all of Delaware, Pennsylvania, *or* Florida law—i.e., limitations *and* tolling provisions—would have been outcome-neutral under CPLR § 202."

Norex points out that defendants' argument breaks down if Florida, like Alberta, has no savings statute. But nothing in our opinion in *Global Financial* indicates that we ever took into account the savings statutes (or lack thereof) in any of the relevant foreign states. And both parties read far too much into our reference to CPLR 205 in a case where, as previously noted, the parties agreed, for whatever reason, that the state court action was not time-barred by section 202 so long as the prior federal court action had been timely filed.

### *Smith Barney*

Defendants attach great importance to our repeated admonition that when New York borrows a statute of limitations, the borrowed limitations period comes fully encumbered with all the foreign jurisdiction's tolling rules. In *Smith Barney*, the case principally relied on by defendants, the common issue in two appeals was whether the arbitrators or the courts should decide the timeliness of disputes that the customers sought to arbitrate with their securities brokers. The arbitration agreements contained New York choice-of-law provisions and were governed by the Federal Arbitration Act. The Appellate Division concluded that the question of timeliness was for the arbitrator to decide. We reversed and remitted each case for the Appellate Division to resolve the parties' statute of limitations arguments, including "applicability of the borrowing statute, relevant accrual dates, tolls and extensions" (*Smith Barney*, 85 NY2d at 207).

When discussing CPLR 202, we observed that "[i]n borrowing the foreign statute, '[a]ll the extensions and tolls applied in the foreign state must be imported with the foreign statutory period, so that the *entire* foreign statute of limitations . . . applie[s], and not merely its period' " (*id.*, quoting McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C202:3 at 109). This is so because the legislature enacted section 202 primarily to prevent forum shopping; i.e., to make sure that nonresidents do not select a New York forum and burden New York's state and federal courts when, and perhaps precisely because, their lawsuits are time-barred by the applicable laws of the foreign states where the causes of action accrued (*see Insurance Co. of N. Am. v ABB Power Generation*, 91 NY2d 180, 187-188 [1997]).

As defendants emphasize, many New York cases recite and apply the general rule that, when borrowing foreign law pursuant to CPLR 202, foreign tolls and extensions must be imported, too (*see e.g. Martin v Dierck Equip. Co.*, 43 NY2d 583 [1978] [action for personal injuries brought in New York more than two years after the plaintiff's claims accrued in Virginia was time-barred under the borrowing statute because Virginia would apply a two-year statute of limitations without any possible tolls]; *Childs v Brandon*, 60 NY2d 927, 929 [1983] [in borrowing a foreign jurisdiction's statute of limitations, "its tolling statute is also borrowed"]; *Antone v General Motors Corp., Buick Motor Div.*, 64 NY2d 20, 31 [1984] ["in 'borrowing' a Statute of Limitations of another State, a New York court will also 'borrow' the other State's rules as to tolling"]; *Portfolio Recovery Assoc., LLC v King*, 14 NY3d 410 [2010] [determining that Delaware's tolling provision did not extend a nonresident plaintiff's time to bring a lawsuit in New York on a cause of action that accrued in Delaware]; *but see GML, Inc. v Cinque & Cinque, P.C.*, 9 NY3d 949, 951 [2007] [borrowing Tennessee's one-year statute of limitations, but not its tolling provisions, because "(a) conclusion to the contrary would cause the statute of limitations to be tolled indefinitely against these defendants, (and the Court did) not believe that the Legislature intended this result in enacting CPLR 202"]).

As Professor Siegel explains, CPLR 202 does not "necessarily [call for] a 'borrowing' [because] the statute really dictates a comparison, with a 'borrowing' of the foreign period only if it is the shorter of the two compared"; and

"[t]he periods that are compared are the 'net' periods. That is, the New York period, with all relevant New York extensions and tolls integrated, is one prong of the comparison, and the foreign period, with the foreign tolls and extensions integrated, is the other. The New York tolls are not superimposed on the foreign period, or vice versa." (Siegel, NY Prac § 57 at 82 [5th ed 2011].)

But it does not follow, as defendants insist, that section 202 required Norex's state court action to be timely under Alberta law when filed in March 2011, either because Alberta's statute of limitations had not yet expired or Norex's claims were saved by an Alberta tolling statute.

Notably, none of the tolling cases relied on by defendants dealt with a *refiled* action like Norex's. These decisions merely show that when assessing whether Norex's *original* action was timely for purposes of CPLR 205 (a), Supreme Court was required to consider the " 'net' period[ ] . . . the [Alberta] period, with [the Alberta] extensions and tolls integrated" (*id.*). Here, the absence of a tolling or savings provision in Alberta law had no practical effect with regard to Norex's original lawsuit. Norex says that it filed its federal complaint within weeks of the events that gave rise to its claims, thereby making its federal action timely under "any potentially applicable" statute of limitations, without tolling. Defendants do not gainsay this.

### Besser

Next, defendants find support for their position in *Besser v Squibb & Sons* (146 AD2d 107 [1st Dept 1989], *affd without op* 75 NY2d 847 [1990]). *Besser* involved the relationship between CPLR 202 and CPLR 214-c (2). The latter provision "revived" time-barred causes of action arising out of exposure to diethylstilbestrol (DES) and other specified toxic substances that might cause harmful effects years, and sometimes decades, after exposure. Section 214-c (2) granted plaintiffs claiming injuries from exposure to these substances a one-time, one-year window during which to bring suits that were either barred as of the statute's effective date, or had been dismissed prior to its effective date solely because the applicable limitations period had expired.

The plaintiff in *Besser* was a non-New York resident at the time her personal injury claim accrued in either Pennsylvania

or New Jersey. Further, her claim was untimely under the laws of both states. As a result, if CPLR 202 applied, her lawsuit was time-barred. Accordingly, she argued that CPLR 202 was not applicable in actions authorized by the revival statute. The Appellate Division disagreed, observing that "the Legislature's intent" in enacting the revival statute was "to provide to *New York residents only*—not the entire world—a one-year window period in which to sue for claims otherwise barred by law" (*id.* at 110 [emphasis added]).

Defendants reason by analogy that CPLR 202 should trump CPLR 205 (a), too. But CPLR 214-c (2) and CPLR 205 (a) bear no resemblance to each other beyond their shared general character as remedial statutes. Importantly, there is no evident legislative intent to limit the savings statute's beneficial scope to resident plaintiffs. As Judge Cardozo explained nearly a century ago, New York's savings statute

> "is designed to insure *to the diligent suitor* the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts" (*Gaines v City of New York*, 215 NY 533, 539 [1915] [emphasis added]; *see also Matter of Goldstein v New York State Urban Dev. Corp.*, 13 NY3d 511, 521 [2009] [Section 205 (a) "shares with its venerable predecessor provisions the broad and liberal purpose of remedying what might otherwise be the harsh consequence of applying a limitations period where the defending party has had timely notice of the action" (internal quotation marks omitted)]).

### Forum Shopping

Finally, defendants accuse Norex of forum shopping in contravention of CPLR 202, having made a "strategic decision" to litigate first in Russia and then in federal court, where it did not assert any New York claims, before finally settling on state court when these earlier lawsuits proved unsuccessful. Norex counters that while CPLR 202 is meant to prevent a nonresident plaintiff from forum shopping by suing in New York courts to take advantage of a longer statute of limitations, that policy

has been "fully served" here. This is so, Norex argues, because it filed its original complaint in federal court in New York "within weeks of the events that [gave] rise to its claims, putting defendants on notice and making those claims timely under *any* statute of limitations, including the Alberta statute of limitations that the [Appellate Division] held must be borrowed under CPLR 202." Norex adds that the federal courts specifically rejected forum shopping as a motive for its federal lawsuit. Further, "[b]ecause Norex was manifestly not forum shopping when it filed its first action in New York, Norex cannot be forum shopping by re-filing that action in New York in accordance with CPLR 205 (a)."

We agree with Norex that, once it timely commenced its federal court action in New York, the borrowing statute's purpose to prevent forum shopping was fulfilled, and CPLR 202 had no more role to play. Because Norex's "prior" federal court action was timely under the borrowing statute, the "new" action that it brought pursuant to the savings statute "would have been timely commenced at the time of commencement of the prior action" (CPLR 205 [a]). Stated another way, it is irrelevant that Alberta law does not have a savings statute similar to CPLR 205 (a) because at the point in time when Norex filed its "new" action in Supreme Court, the borrowing statute's requirements had already been met. In our view, this reading of the way in which CPLR 202 and CPLR 205 (a) interrelate best comports with statutory language, and honors both the borrowing statute's purpose to prevent forum shopping and the savings statute's goal to "implement[ ] the vitally important policy preference for the determination of actions on the merits" (*Goldstein*, 13 NY3d at 521 [internal quotation marks omitted]; *see generally* Horowitz, Burden of Proof, *"A Dangerous Intersection,"* 86 NY St BJ 20 [May 2014]).

### III

The lower courts' rulings with respect to 28 USC § 1367 (d) evoked interest in legal academic circles. An amicus curiae brief on this topic, which was jointly filed by Professors Thomas D. Rowe, Stephen B. Burbank and Thomas M. Mengler, supported Norex's motion for leave to appeal; another amicus brief, filed by Professor Jonathan Siegel, similarly took issue with the Appellate Division's interpretation of section 1367 (d). Professors Rowe, Burbank and Mengler, who endorsed Professor Siegel's brief, assisted in drafting the federal supplemental jurisdiction statute.

The amici curiae disagree with the Appellate Division's holding that, as summarized by Professor Siegel, "§ 1367 (d)'s tolling period does not apply because New York's CPLR 205 (a) *generally* provides a longer tolling period, even though . . . CPLR 205 (a) does not apply to this *particular* case" by operation of CPLR 202. Professors Rowe, Burbank and Mengler call this outcome an "intolerable Catch-22." Professor Siegel offered various reasons why the Appellate Division was incorrect and how its holding "disserve[d] the goals of judicial economy, convenience, and fairness" which section 1367 (d) was designed to promote.

Because we have determined that Norex's state court action is not time-barred by CPLR 202, we need not and do not consider whether Norex's claims were timely filed in state court pursuant to 28 USC § 1367 (d). We note, though, that in light of our disposition of this appeal, the complained-of "Catch-22" is unlikely to recur.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

Order reversed, with costs, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.