## GRIT BXNG at Home, Inc. v SweatWorks LLC

2026 NY Slip Op 31011(U)

March 16, 2026

Supreme Court, New York County

Docket Number: Index No. 655268/2024

Judge: Melissa A. Crane

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. MELISSA A. CRANE**

*Justice*

PART            **60M**

-------------------------------------------------------------------------------X

GRIT BXNG AT HOME, INC.,

                  Plaintiff,

     - vs -

SWEATWORKS LLC,

                  Defendant.

**ACTION NO. 01 - Index No. 655267/2024**

-------------------------------------------------------------------------------X

GRIT BXNG LLC,

                  Plaintiff,

     - vs -

SWEATWORKS LLC,

                  Defendant.

**ACTION NO. 02 - Index No. 655268/2024**

-------------------------------------------------------------------------------X

SWEATWORKS LLC and SWEATWORKS HOLDINGS LLC,

                  Third-Party Plaintiffs,

     -vs-

GRIT BXNG LLC, GRIT BXNG AT HOME, INC., WORK HARD PLAY HARD TRAIN HARD INC., WILLIAM ZANKER, EDIVA ZANKER and DYLAN ZANKER,

                  Third-Party Defendants.

**Third-Party Action**

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 655268/2024 |
| MOTION DATE | 10/10/2025, 10/10/2025 |
| MOTION SEQ. NO. | 002 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 78, 79

were read on this motion to/for           DISMISSAL          .

655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL
Motion No.  002 003

Page 1 of 18

1 of 18

The following e-filed documents, listed by NYSCEF document number (Motion 003) 64, 65, 66, 67, 68, 69, 70, 71, 77, 80

were read on this motion to/for                        DISMISSAL                          .

In motion sequence number 002, third-party defendants move, pursuant to CPLR 3211 (a) (1), (5), and (7), to dismiss the third-party complaint. In motion sequence number 003, first-party defendant moves, pursuant to CPLR 3211 (a) (7), to dismiss the complaint in the action denominated Action No. 02 in the above caption (Index No. 655268/2024). For the reasons set forth below, motion sequence number 002 is granted in part and denied in part, and motion sequence number 003 is granted.

## BACKGROUND

This litigation arises from a business relationship between SweatWorks LLC, a technology company in the fitness and wellness industry, and GRIT BXNG AT HOME, INC. (GRIT HOME), an affiliate of GRIT BXNG LLC (GRIT BXNG). GRIT BXNG operated a fitness studio in New York City offering in-person boxing-style workouts and training. GRIT HOME was incorporated in 2021 to offer an at-home fitness product.

In February 2021, SweatWorks LLC entered into an agreement with GRIT HOME, pursuant to which SweatWorks LLC agreed to develop the software and hardware for the at-home product (the Agreement) (NYSCEF Doc. No. 8). GRIT HOME ultimately dubbed the product "GRIT EPIQ."

GRIT BXNG initiated this action, under Index No. 655268/2024, against SweatWorks LLC in October 2024, alleging that it paid SweatWorks LLC over $400,000, was disappointed in the quality of the work SweatWorks LLC delivered, and that SweatWorks LLC never delivered a

655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL
Motion No.  002 003

Page 2 of 18

2 of 18

[* 2]

working product (Complaint, NYSCEF Doc. No. 1).[1]  It further alleges that despite failing to deliver the product, SweatWorks LLC "decided to promote (on its website at www.SweatWorks.com) its work for the GRIT BXNG entities as if [it] had actually developed a working app for those entities and as if those GRIT BXNG entities were actually marketing and offering such an app to consumers" (*id.* at ¶ 15).   The complaint alleges that the statements and depictions on the website were meant to convince potential customers that SweatWorks LLC had successfully created a product for GRIT BXNG.  "However, each of these representations . . . depicting and concerning the creation of an in-home fitness app for GRIT BXNG and about the supposed quality and nature of those apps is demonstrably false because SweatWorks never successfully developed or completed any such apps" (*id.* at ¶ 21).  According to GRIT BXNG, these misrepresentations damaged its reputation.  The complaint sets forth causes of action against SweatWorks LLC for violations of General Business Law §§ 349 and 350, unfair competition, unjust enrichment, and business disparagement.

SweatWorks LLC and Sweat Works Holdings LLC, an investment arm of SweatWorks LLC (hereinafter together SweatWorks), initiated a third-party action against GRIT BXNG, GRIT HOME, and Work Hard Play Hard Train Hard Inc. (WHPH), that owns a 90% stake in GRIT HOME (Third-Party Complaint at NYSCEF Doc. No. 46).  SweatWorks also named William Zanker, Ediva Zanker, and Dylan Zanker (the Zankers) as third-party defendants, alleging that William Zanker owns an approximate 65% equity stake in WHPH, is the controlling shareholder, and holds the titles of President, CEO, and Director of WHPH, as well as owning a 5% equity stake in GRIT HOME and is GRIT HOME's President, CEO, Director,

---

[1] On the same date, GRIT HOME initiated an action against SweatWorks LLC under Index No. 655267/2024 (Action No. 01 in the caption) based on similar allegations.  That action was joined with this action for the purposes of discovery only (NYSCEF Doc. No. 74). The actions are not consolidated.

**655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL**                                      **Page 3 of 18**
  **Motion No.  002 003**

3 of 18

[* 3]

and Chairman.  The third-party complaint alleges that Ediva Zanker holds the title of Co-Founder and Director of GRIT HOME, is an employee of GRIT HOME, and that both Ediva Zanker and Dylan Zanker have an equity stake in WHPH.

SweatWorks alleges that through material misrepresentations and omissions, the Zankers induced SweatWorks to purchase 250,000 shares of GRIT HOME common stock for $ 600,000. The Zankers knew these representations were false and were aimed at securing investments in GRIT HOME in order to convert a substantial portion of SweatWorks' investment for the Zankers' own benefit by using the funds to pay off startup loans made to GRIT HOME by related-party entities the Zankers controlled, ultimately depleting GRIT HOME's bank account. SweatWorks alleges that as a result, little if any of its investment remains in GRIT HOME's account, and GRIT HOME is nowhere close to developing or launching any product or making any sales.

Based on these allegations, the third-party complaint sets forth causes of action against: (1) the Zankers for fraudulent inducement; (2)  Ediva and Dylan Zanker for fraudulent concealment; (3) William and Ediva Zanker for breach of fiduciary duty and waste; and (4) William and Ediva Zanker, WHPH and GRIT BXNG for unjust enrichment.  In addition, SweatWorks seeks to domesticate and enforce a foreign judgment from Virginia.

Third-party defendants now move, pursuant to CPLR 3211 (a) (1), (5), and (7), to dismiss the third-party complaint in its entirety (Mot Seq No 002).  SweatWorks LLC moves, pursuant to CPLR 3211 (a) (7), to dismiss the complaint in its entirety (Mot Seq No 003).

## DISCUSSION

On a motion to dismiss under CPLR 3211 (a) (7), dismissal is warranted only if the movant "fails to assert facts in support of an element of the claim, or if the factual allegations

655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL
Motion No.  002 003

Page 4 of 18

4 of 18

and inferences to be drawn from them do not allow for an enforceable right of recovery" (*Audthan LLC v Nick & Duke, LLC*, 42 NY3d 292, 303 [2024] [internal quotation marks and citations omitted]). "While this pleading standard is a liberal one, [a] pleading is not an empty formality, and conclusory factual allegations do not provide the support necessary to survive a motion to dismiss even under the CPLR 3211 (a) (7) standard" (*IntegrateNYC, Inc. v State of New York*, __ NY3d __ , 2025 NY Slip Op 05870, *2 [2025] [internal quotation marks and citations omitted]).

"A party is entitled to dismissal pursuant to CPLR 3211 (a) (1) where documentary evidence . . . conclusively establishes a defense to the asserted claims as a matter of law" (*Behler v Kai-Shing Tao*, 43 NY3d 343, 348 [2025] [internal quotation marks and citations omitted]). On a motion to dismiss on statute of limitations grounds, under CPLR 3211 (a) (5), "a defendant must establish, prima facie, that the time within which to sue has expired. Once that showing has been made, the burden shifts to plaintiffs to offer evidentiary facts establishing that the action was timely commenced" (*Mandour v Rafalsky*, 238 AD3d 637, 637-638 [1st Dept 2025] [internal citations omitted]). On a motion to dismiss, the facts alleged in the complaint must be accepted as true and the plaintiff must be afforded every favorable inference (*see Leon v Martinez*, 84 NY2d 83, 638 [1994]).

### SweatWorks LLC's Motion to Dismiss the Complaint

*First and Second Causes of Action – Violations of General Business Law §§ 349 and 350*

General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." General Business Law § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the

655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL
Motion No.  002 003
Page 5 of 18

5 of 18

furnishing of any service." General Business Law § 349 (h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name."

"[T]o state a claim under sections 349 or 350, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice" (*Plavin v Group Health Inc.,* 35 NY3d 1, 10 [2020]). "[A] plaintiff claiming the benefit of either section 349 or 350 must charge conduct of the defendant that is consumer-oriented or, in other words, demonstrate that the acts or practices have a broader impact on consumers at large" (*id.* [internal quotation marks and citations omitted]).

Here, even assuming the challenged content on SweatWorks LLC's website was deceptive, GRIT BXNG fails to adequately allege that it suffered any injury as a result of SweatWorks' allegedly misleading conduct (*see Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20, 26 [1995] ["a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice *that caused* actual, although not necessarily pecuniary, harm"] [emphasis added]). The complaint includes only the bare allegation that GRIT BXNG suffered "damages to [its] reputation" as a result of the misleading content on the website. It lacks any factual specificity, however, as to why GRIT BXNG'S reputation or revenue would be impacted, no less negatively impacted, by the allegedly misleading information on the website. Indeed, neither the complaint nor the submissions offered in opposition to the motion allege how the misrepresentations denigrate GRIT BXNG or otherwise depict it in a negative light.

"It is assumed, of course, that [GRIT BXNG's] factual allegations are true, both in the complaint and in opposition to the motion. However, conclusory allegations will not serve to

defeat a motion to dismiss" (*DRMAK Realty LLC v Progressive Credit Union*, 133 AD3d 401, 404 [1st Dept 2015] [internal quotation marks and citations omitted]). Thus, based on the circumstances and arguments presented on this motion, the first and second causes of action in the complaint are dismissed.

*Third Cause of Action – Unfair Competition*

New York courts "have long recognized two theories of common-law unfair competition: palming off and misappropriation" (*ITC Ltd. v Punchgini, Inc.,* 9 NY3d 467, 476 [2007]). Here, the complaint alleges misappropriation of GRIT BXNG's trademark as the basis for the unfair competition cause of action (*see* Complaint at ¶¶ 57-62). "Under the misappropriation theory of unfair competition, a party is liable if they unfairly exploit the skill, expenditures and labors *of a competitor*" (*E.J. Brooks Co. v Cambridge Sec. Seals*, 31 NY3d 441, 449 [2018] [internal quotation marks and citations omitted] [emphasis added]; *see ITC Ltd. v Punchgini, Inc.*, 9 NY3d at 478 ["Under New York law, [a]n unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property *to compete against the plaintiff's own use of the same property*"] [internal quotation marks and citations omitted] [emphasis added]). In this case, GRIT BXNG fails to state a cause of action for unfair competition under a misappropriation theory because it does not allege that SweatWorks LLC is a competitor or that SweatWorks LLC took and used GRIT BXNG's alleged trademark to compete against GRIT BXNG. Thus, the third cause of action in the complaint is dismissed.

*Fourth Cause of Action – Unjust Enrichment*

A plaintiff alleging unjust enrichment "must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered" (*Mandarin Trading Ltd. v Wildenstein*, 16

655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL                Page 7 of 18
Motion No.  002 003

7 of 18

NY3d 173, 182 [2011] [internal quotation marks and citations omitted]). Here, the complaint contains no specific, non-conclusory facts indicating how SweatWorks LLC was enriched at GRIT BXNG's expense. It merely asserts that SweatWorks LLC "obtained clients and generated revenue" by using GRIT BXNG's name. This assertion is conclusory and, therefore, insufficient to state a cause of action for unjust enrichment (*see Rosenberg v OSG, LLC*, 224 AD3d 466, 467 [1st Dept 2024] ["Plaintiffs' unjust enrichment claim was also properly dismissed, as the complaint asserts no nonconclusory facts suggesting that defendants were enriched at their expense"]). Thus, the fourth cause of action in the complaint is dismissed.

### Fifth Cause of Action – Business Disparagement

"Disparagement has been defined as '[matter] which is intended by its publisher to be understood or which is reasonably understood to cast doubt upon the existence or extent of another's property in land, chattels or intangible things, or upon their quality, is disparaging thereto, if the matter is so understood by its recipient' (Restatement Torts § 629). Generally there must be intentional communication to a third person, without privilege, resulting in direct financial loss to the party whose interest is disparaged" (*Payrolls & Tabulating v Sperry Rand Corp.*, 22 AD2d 595, 598 [1st Dept 1965]). Here, there are no allegations indicating how the information published on the website disparaged GRIT BXNG's business so as to cause a financial loss or impact GRIT BXNG's reputation. Thus, the fifth cause of action in the complaint is dismissed.

### Third-Party Defendants' Motion to Dismiss the Third-Party Complaint

### First Causes of Action – Fraudulent Inducement against the Zankers

In the first cause of action, asserted against the Zankers, SweatWorks alleges that the Zankers knowingly made materially false representations in the context of soliciting

655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL
Motion No.  002 003

Page 8 of 18

8 of 18

SweatWorks to purchase shares of stock in Grit Home. SweatWorks asserts that but for these alleged misrepresentations, it would not have invested in Grit Home and, in turn, would not have lost its $ 600,000 investment.

Under this cause of action, SweatWorks alleges that the Zankers each assured SweatWorks that the $ 600,000 investment would be used for "a proper purpose" only, namely product development of hardware and software, R&D marketing, production, and the launch expenses for the planned GRIT EPIQ product. When they made these representations, however, the Zankers were already preparing to divert the funds for improper purposes – specifically, to pay off startup capital loans made to GRIT HOME by related-party entities owned and/or controlled by the Zankers. SweatWorks alleges that the Zankers mislead SweatWorks' CEO, Mr. Iqbal, by stating that these related parties did not expect repayment, the loans bore no interest, and had no due date. In reality, however, the loans were due upon demand, and the Zankers intended to, and eventually did, convert a substantial portion of SweatWorks' investment for their own benefit by repaying these startup loans, ultimately depleting GRIT HOME's bank account. Further, William Zanker represented that he was willing to continue personally funding GRIT HOME if sufficient funds were not raised for the project, while at the same time preparing to misappropriate the funds SweatWorks invested to pay off the startup capital loans his own company made to GRIT HOME.

Additionally, the third-party complaint alleges that, beginning in December 2021, GRIT HOME failed to pay SweatWorks the amounts due to SweatWorks for services it performed pursuant to the Agreement. Despite its failure to pay, GRIT HOME retained the benefits of SweatWorks' software and hardware engineering services. "William Zanker represented that SweatWorks' investment [in GRIT HOME] would enable it to pay SweatWorks for the work it

655268/2024  GRIT BXNG LLC vs. SWEATWORKS LLC ET AL                    Page 9 of 18
Motion No.  002 003

9 of 18

was performing — in other words, to 'invest with upside,' as in a worst-case scenario where the GRIT EPIQ was not a commercial success, SweatWorks would receive a return of its investment through the provision of services to" GRIT HOME (Third-Party Complaint at ¶ 37).

Finally, SweatWorks alleges that the Zankers misrepresented that several influential and wealthy celebrities, investors, entrepreneurs, and influencers, including Pitbull, Lucy Guo, Tony Robbins, Tim Draper, and Naveen Jain backed GRIT HOME. SweatWorks alleges that none of these individuals ever had equity in, or involvement with, GRIT HOME and that it "reasonably relied on the representations made in the pitch Deck (and elsewhere) that the foregoing individuals had equity in Grit Home and would be incentivized to promote and/or provide financial and other assistance to Grit Home, which would have the benefit of protecting SweatWorks' investment in Grit Home" (Third-Party Complaint at ¶ 39).

In support of their motion, third-party defendants contend that this cause of action for fraudulent inducement should be dismissed as time-barred under Virginia's two-year statute of limitations based on New York's borrowing statute, CPLR 202. CPLR 202 provides:

> "An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

Thus, when a cause of action accrues outside of New York and the plaintiff is a non-resident, the applicable statute of limitations is the shorter of the New York limitation period or the limitation period of the place where the cause of action accrued (*see Norex Petroleum Ltd. v Blavatnik*, 23 NY3d 665, 668 [2014]). "This prevents nonresidents from shopping in New York for a favorable Statute of Limitations" (*Global Fin. Corp. v Triarc Corp.*, 93 NY2d 525, 528 [1999]).

In this case, SweatWorks is a resident of the state of Virginia and is alleging purely economic injuries under the first cause of action. Therefore, the injuries accrued in Virginia (*see*

655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL
Motion No. 002 003

Page 10 of 18

10 of 18

*Global Fin. Corp. v Triarc Corp.*, 93 NY2d at 529 [when claimed injury is purely economic, the cause of action typically accrues "where the plaintiff resides and sustains the economic impact of the loss"] [citations omitted]; *Matter of Smith Barney, Harris Upham & Co. v. Luckie,* 85 NY2d 193, 207 [1995] [accrual of a securities fraud claim occurs "where the investors resided and sustained the economic impact of the loss"]).

Virginia law provides a two-year statute of limitations for fraud (*see* Virginia Code § 8.01-243 [A] ["every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues"]). The cause of action is deemed to accrue "when such fraud, mistake, misrepresentation, deception, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered" (Virginia Code § 8.01-249 [1]).

Here, third-party defendants failed to sustain their burden of establishing prima facie that this cause of action is untimely. They assert that SweatWorks should have discovered by April 2022 that the loans at issue were repayable upon demand and that the funds invested by SweatWorks were used to repay such loans. They point out in this regard that in a Form 1-K/A Report, filed with the United States Securities and Exchange Commission (SEC) in April 2022, GRIT HOME disclosed that since its inception, it had relied upon loans with repayment due upon demand (citing Third-Party Complaint at ¶ 63). This information contradicted what the Zankers told SweatWorks during the pitch – that the loans were not repayable on demand. Therefore, SweatWorks should have been aware of the alleged fraud upon the filing of the form with the SEC. This contention is misplaced.

Absent some knowledge that would have required SweatWorks to investigate, the mere filing of the Form 1-K/A Report in April 2022 is not sufficient to constitute constructive notice (*see Guedj v Dana*, 11 AD3d 368, 368 [1st Dept 2004] ["The mere fact that deeds had earlier

655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL
Motion No.  002 003

Page 11 of 18

been recorded was insufficient to constitute constructive notice . . . in the absence of some knowledge that would require plaintiffs to investigate the public records"]; *see also US Pony Holdings, LLC v Fashion Footwear LLC*, 238 AD3d 554, 555 [1st Dept 2025] [noting in the context of an attempt to invoke equitable estoppel that although information was available on SEC website, "plaintiff identifies no evidence suggesting that defendant's duty to investigate these facts was ever triggered"]).

Moreover, affording SweatWorks the benefit of every favorable inference, the statement in the Form 1-K/A Report (that the loans were repayable on demand) does not suggest that a demand was actually made or that the funds SweatWorks invested would be used to pay off the loans. SweatWorks' submission indicates that it first discovered that the funds it invested were used to pay off the loans in November 2024, when GRIT HOME's QuickBooks data was produced in an action brought by SweatWorks against GRIT HOME in May 2023 in the Arlington County Circuit Court of Virginia (the Virginia Action).[2] Third-party defendants fail to establish that prior to that point, SweatWorks had a reason to suspect that a demand for repayment had been made, that the funds it invested were used to pay off the loans, or that William Zanker had no intention of continuing to personally fund GRIT HOME.

As to the misrepresentations concerning celebrity investment, the third-party complaint alleges that an investor deck depicted Pitbull, Lucy Guo, Tony Robbins, Tim Draper, and Naveen Jain as an "All-Star Line Up of Equity Holders," whereas none of these individuals have any equity in, or involvement with, GRIT HOME (Third-Party Complaint at ¶¶ 38-39). It further alleges that William and Dylan Zanker repeatedly represented that SweatWorks would be

---

[2] In the Virginia Action, SweatWorks sought to recover damages for, inter alia, breach of contract in connection with the Agreement (*SweatWorks LLC v GRIT BXNG At Home, Inc.*, Case No. CL23-1671; *see* NYSCEF Doc. No. 12).

investing alongside these celebrities. In addition, SweatWorks highlights other marketing material referring to these celebrity investors.

Third-party defendants assert that the investor deck, and other materials provided to SweatWorks, indicate that these celebrities were not, in fact, investors in GRIT HOME, but shareholders in WHPH. They argue that because WHPH owned 90% of GRIT HOME, the celebrity's ownership interest in WHPH made them equity holders in GRIT HOME, and in any event, these materials should have alerted SweatWorks that the celebrities did not have any direct ownership in GRIT HOME. Third-party defendants' argument is premised upon the theory that these materials do not falsely imply that the celebrities directly invested in GRIT HOME and, as such, they did not make false representations in this regard. However, the materials, when viewed together with the allegation that the Zankers repeatedly told SweatWorks' CEO that he would be investing in GRIT HOME alongside these celebrities, can reasonably be interpreted as implying that they were, in fact, direct investors in GRIT HOME.

Third-party defendants' contention that the statements made about the celebrity investors are "forward looking" and therefore not actionable is also without merit. The investor deck denominates these individuals as an "All-Star Line Up of Equity Holders," indicating that these individuals were already equity holders in GRIT HOME.

Third-party defendants further argue that the first cause of action is not pleaded with particularity. However, the third-party complaint alleges that all three of the Zankers assured SweatWorks that the funds would be used for proper purposes (Third-Party Complaint at ¶ 75), whereas they intended all along to use the funds to repay startup loans their companies made to GRIT HOME. "[E]ven absent details of time and place, [the third-party complaint] allege[s] facts sufficient to permit a reasonable inference of the alleged misconduct, thereby meeting the

655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL
Page 13 of 18
Motion No.  002 003

13 of 18

[* 13]

heightened pleading requirement of CPLR 3016 (b)" (*Goldin v TAG Virgin Is., Inc.*, 149 AD3d 467, 467 [1st Dept 2017]).

The contention that the third-party complaint is bereft of allegations that the Zankers did not intend to keep their promise that the loans would not be repaid is also unpersuasive. Affording SweatWorks the benefit of every favorable inference, the Zankers' intent can be inferred from the allegations that "[i]n reality, the Zanker Defendants induced SweatWorks to invest in order to convert a substantial portion of SweatWorks' investment for their own personal benefit, to repay startup 'loans' from related party entities wholly controlled by the Zanker Defendants" (Third-Party Complaint at ¶ 3). Further, the third-party complaint alleges that before SweatWorks even made the investment, the Zankers used $25,000 to repay one of the loans that were expressly represented as not being expected to be repaid (*id.* at ¶ 60). It also states that "William Zanker and Ediva Zanker knew these representations [that the funds would be used for proper purposes] were false, or were reckless with respect to their falsity because at the same time the Zanker Defendants were misleading SweatWorks into investing in Grit Home, William and Ediva Zanker were preparing to divert that investment to the Zanker Defendants' pockets for personal gain" (*id.* at ¶ 75 [a]).

Third-party defendants further assert that there are no non-conclusory allegations that Ediva or Dylan Zanker made any misrepresentations and there are no non-conclusory allegations that Ediva or Dylan Zanker had any involvement in publishing the allegedly misleading materials. This contention is also without merit (*see* Third-Party Complaint at ¶¶ 38, 39, 48, 54, 57, 74, 75).

Finally, to the extent third-party defendants may be understood as arguing that this cause of action cannot be brought against the Zankers in their personal capacities, this contention is

655268/2024 GRIT BXNG LLC vs. SWEATWORKS LLC ET AL Page 14 of 18
Motion No. 002 003

14 of 18

incorrect.  Since the third-party complaint alleges that each of the Zankers participated in the alleged fraud, they may be held individually liable (*see Polonetsky v Better Homes Depot*, 97 NY2d 46, 55 [2001] ["In actions for fraud, corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud"]).

Thus, the court declines to dismiss the first cause of action in the third-party complaint.

### *Second Causes of Action – Fraudulent Concealment against William and Ediva Zanker*

Under the second cause of action, SweatWorks alleges that William and Ediva Zanker failed to disclose material information about the nature of the loans made to GRIT HOME. Specifically, the Offering Circular stated that such loans did not bear interest or have a maturity date and were not expected to be repaid.  Yet, William and Ediva Zanker omitted, concealed, and failed to disclose that the loans were, in fact, payable upon demand from the holders, companies entirely the Zankers controlled and dominated.

Third-party defendants assert that this cause of action is time-barred under Virginia's two-year statute of limitations given that the Form 1-K/A Report, filed with the SEC in April 2022, disclosed that since its inception, GRIT HOME relied upon loans with repayment due on demand.  As already discussed, however, absent some knowledge that would have required SweatWorks to investigate, the mere filing of the Form 1-K/A Report in April 2022 is not sufficient to constitute constructive notice.  Moreover, the Form 1-K/A Report does not reveal that the loans at issue were made by entities the Zankers controlled and dominated.

Thus, the court declines to dismiss the second cause of action in the third-party complaint.

### *Third, Fourth, and Fifth Causes of Action – Breach of Fiduciary Duty, Waste, and Unjust Enrichment*

Third-party defendants assert that the causes of action for breach of fiduciary duty

655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL
Motion No.  002 003

Page 15 of 18

(asserted against William and Ediva Zanker), waste (asserted against William and Ediva Zanker), and unjust enrichment (asserted against William Zanker, Ediva Zanker, WHPH, and GRIT HOME), should be dismissed under CPLR 3211 (a) (1), on the ground that a forum selection clause in an amendment to GRIT HOME's Certificate of Incorporation (COI) requires that such claims be brought in the Court of Chancery of the State of Delaware. The clause states in part:

> "Unless the corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall, to the fullest extent permitted by law, be the sole and exclusive forum for (1) any derivative action or proceeding brought on behalf of the corporation; [and] (2) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the corporation to the corporation or the corporation's stockholders"

(Amended COI ¶ VII, NYSCEF Doc. No. 61 at 7).

A forum selection clause "is documentary evidence that may provide a proper basis for dismissal pursuant to CPLR 3211 (a) (1)" (*Landmark Ventures, Inc. v Birger*, 147 AD3d 497, 497 [1st Dept 2017] [quotation marks and citations omitted]) and the enforcement of such clauses is governed by New York law (*see Amazing Home Care Servs., LLC v Applied Underwriters Captive Risk Assur. Co. Inc.*, 191 AD3d 516, 518 [1st Dept 2021] ["We apply New York law in determining whether to enforce a forum selection clause"]).

> "Forum selection clauses, which are prima facie valid, are enforced because they provide certainty and predictability in the resolution of disputes and are not to be set aside unless a party demonstrates that the enforcement of such would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching, *such that a trial in the contractual forum would be so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court*"

(*Sterling Natl. Bank v Eastern Shipping Worldwide, Inc.*, 35 AD3d 222, 222 [1st Dept 2006] [internal quotation marks and citations omitted] [emphasis added]). A "certificate of incorporation is subject to the usual rules of contract interpretation" (*Barton v 270 St. Nicholas Ave. Hous. Dev. Fund Corp.*, 84 AD3d 696, 696 [1st Dept 2011]).

[* 16]

Here, the forum selection clause clearly provides that the Delaware Chancery Court "shall" be the forum for any breach of fiduciary duty claim and any claim brought on behalf of the corporation, GRIT HOME. SweatWorks states in the third-party complaint that it brings the causes of action for breach of fiduciary duty, waste, and unjust enrichment derivatively, on behalf of, and for the benefit of, GRIT HOME.[3] Third-party defendants assert, therefore, that such claims clearly fall under the forum selection clause.

In opposition, SweatWorks does not refute that the causes of action for breach of fiduciary duty, waste, and unjust enrichment all fall under the forum selection clause. Rather, it asks the court not to enforce the clause because doing so would require it to litigate in Delaware, a state that SweatWorks has no connection to and that the third-party defendants "barely have any ties to." However, SweatWorks fails to advance any grounds upon which the court could decide that litigating these claims in Delaware would be so gravely difficult and inconvenient that it would be deprived of its day in court. Indeed, as the third-party defendants point out, while SweatWorks argument appears to be based upon distance, Delaware is closer to SweatWorks' home state of Virginia than New York. It is further noted that SweatWorks has not alleged any fraud or overreaching on the part of the third-party defendants with respect to the forum selection clause.

Thus, the court dismisses the third, fourth, and fifth causes of action in the third-party complaint on the grounds that they must be brought in a Delaware Chancery Court.

***Sixth Cause of Action – Domestication of Foreign Judgment***

---

[3] The third-party complaint also states that the second cause of action for fraudulent concealment is brought derivatively. However, unlike the third, fourth, and fifth causes of action, the second cause of action seeks damages for the benefit of SweatWorks, not GRIT HOME and is, therefore, not pleaded derivatively. Furthermore, third-party defendants do not ask the court to dismiss the second cause of action on the basis of the forum selection clause.

655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL
Motion No.  002 003

Page 17 of 18

17 of 18

Finally, in the sixth cause of action, SweatWorks seeks to domesticate a foreign Judgment obtained in the Virginia action. This cause of action is dismissed on the grounds that the relief requested is sought in a separate special proceeding (*see* Index No. 159471/2025, Sup Ct, NY County).

The parties' remaining contentions are either unavailing or academic in light of this court's determination.

Accordingly, it is hereby

**ORDERED** third-party defendants' motion to dismiss the third-party complaint is granted only to the extent that the third, fourth, fifth, and sixth causes of action in the third-party complaint are dismissed, and the motion is otherwise denied (Mot Seq No 002); and it is further

**ORDERED** that first-party defendant's motion to dismiss the complaint in Action No. 02, Index No. 655268/2024, is granted and the complaint is dismissed (Mot Seq No 003); and it is further

**ORDERED** that the Clerk of the Court is directed to enter judgment accordingly.

20260316140056MACRANEB76173438DB04918A128469EBCBD5BD3

| | | |
|---|---|---|
| **3/16/2026** | | **MELISSA A. CRANE, J.S.C.** |
| **DATE** | | |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

655268/2024   GRIT BXNG LLC vs. SWEATWORKS LLC ET AL
Motion No.  002 003

Page 18 of 18